UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal Action No. 22-10157-FDS |
| **KOBE SMITH,** | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, C.J.**

This is a criminal prosecution arising out of an alleged conspiracy to transport firearms from Alabama to Massachusetts.  Defendant Kobe Smith is charged with one count of conspiracy under 18 U.S.C. § 371 to commit illegal transportation and receipt in state of residency of a firearm purchased or acquired outside of state of residency in violation of 18 U.S.C. § 922(a)(3).

Defendant has moved to dismiss the indictment on the grounds that § 922(a)(3) is unconstitutional, both facially and as applied to him.  For the reasons set forth below, the motion to dismiss will be denied.

**I.     Background**

The facts are presented as set forth in the indictment.[1]

---

[1] The allegations of the indictment are presumed to be true for the purposes of assessing whether it is sufficient to withstand a motion to dismiss. *United States v. Dunbar,* 367 F. Supp. 2d 59, 60 (D. Mass. 2005) (citing *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 343 n. 16 (1952).

From January 2, 2020, until at least May 27, 2021, Kobe Smith conspired to obtain at least 24 firearms from Alabama and transport them to Massachusetts. He placed orders for the firearms in Alabama and then arranged for the transportation of those firearms to Massachusetts. He paid for them with cash, other firearms, and marijuana. He retained possession of some for his personal use and distributed others to associates in Boston. He did not have a license to possess firearms in Massachusetts.

## II.    Legal Standard

Defendant has moved to dismiss the indictment in its entirety. "An indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Labs of Virginia, Inc.,* 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003); *see also United States v. Flores,* 404 F.3d 320, 324 (5th Cir. 2005); *United States v. Tawahongva,* 456 F. Supp. 2d 1120, 1125 (D. Ariz. 2006). In considering a motion to dismiss an indictment, the court must assume all facts in the indictment to be true and views all facts in the light most favorable to the government. *United States v. Sampson,* 371 U.S. 75, 78–79 (1962); *United States v. Ferris,* 807 F.2d 269, 271 (1st Cir. 1986). To the extent a motion to dismiss relies on disputed facts, the motion should be denied. *United States v. Covington,* 395 U.S. 57, 60 (1969); *see also United States v. Caputo,* 288 F. Supp. 2d 912, 916 (N.D. Ill. 2003).

## III.   Analysis

### A.    Timeliness of the Rule 12(b) Motion

Under Rule 12(c)(1), the court may "set a deadline for the parties to make pretrial motions." Fed. R. Crim. P. 12(c)(1). If a party fails to "meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). Nevertheless, the court "may consider the defense, objection, or request if the party shows good cause." *Id.* On June 27, 2023, Magistrate Judge Dein ordered that defendant file any dispositive motions by August 15,

2023.  (Docket No. 90 ¶ 3).  More than four months later, on December 19, 2023, defendant filed this motion to dismiss without any showing of good cause.  As a result, the court could dismiss his motion as untimely.  Regardless, however, his constitutional challenge is without merit.

### B. Facial Challenge to § 922(a)(3)

Defendant has moved to dismiss the indictment on the ground that § 922(a)(3) is facially unconstitutional under the framework adopted by the Supreme Court in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The Supreme Court in *Bruen* struck down a New York licensing regime requiring individuals to demonstrate "proper cause" in order to carry a handgun in public for self-defense.  *Bruen*, 142 S. Ct. at 2122.  The court held that the scheme "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  *Id.* at 2156.  In reaching that conclusion, the *Bruen* court "reiterate[d]" the two-part "standard for applying the Second Amendment."  *Id.* at 2129.  First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Id.* at 2126.  Second, when a government regulation burdens such "presumptively protect[ed] . . . conduct," the "government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2126, 2130.

Defendant contends that under *Bruen*'s two-step framework, § 922(a)(3) is facially unconstitutional.  Section 922(a)(3) provides that it is unlawful "for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such

3

person outside that State."[2]  18 U.S.C. § 922(a)(3).

Defendant asserts that his conduct is covered by the plain text of the Second Amendment because "statutes [that] criminalize the *receipt* of firearms inherently criminalize *possession* of them." (Docket No. 122 at 10).  He further alleges that a statute that places only an indirect burden on Second Amendment rights is not exempt from *Bruen*'s two-step framework.  (*Id.* at 11-12).

The Court finds that argument unpersuasive.  Section 922(a)(3) does not burden an individual's right to possess a firearm for legitimate purposes of self-defense.  To the contrary, it leaves open *"*ample alternative means of acquiring firearms for self-defense purposes." *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012).  It does not restrict anyone, for example, "from purchasing a firearm in her home state, which is presumptively the most convenient place to buy anything." *Id.*  It also "does not bar purchases from an out-of-state supplier if the gun is first transferred to a licensed gun dealer in the purchaser's home state." *Id.*  Indeed, "[t]he delay incurred if a handgun is purchased out of state and transferred to an in-state [federally licensed firearms dealer] is de minimis." *Mance v. Sessions*, 896 F.3d 699, 709 (5th Cir. 2018) (denying a challenge under the Second Amendment to Section 922(a)(3)).  Such a "de minimis burden on downstream possession rights" fails to "trigger *Bruen* scrutiny." *United States v. Flores*, No. H-20-427, 2023 WL 361868, at *5 (S.D. Tex. Jan. 23, 2023); *see also United States v. Lucha El Libertad*, No. 22-cr-644, 2023 WL 4378863, at *13 (S.D.N.Y. July 3, 2023) ("Like the 'shall-issue' state-licensing regimes held out by the *Bruen* majority opinion and Kavanaugh concurrence as putatively lawful on their face, § 922(a)(3) therefore does not on its face operate to prevent anyone from keeping or bearing arms; it merely prescribes and proscribes particular

---

[2] 18 U.S.C. § 922(a)(3) is subject to certain exceptions that are not relevant here.

modes of acquiring guns, so as 'to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.'") (quoting *Bruen*, 142 S.Ct. at 2138 n. 9).

Furthermore, the Supreme Court has emphasized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Accordingly, "laws imposing conditions and qualifications on the commercial sale of arms" are not prohibited by the Second Amendment. *Id.* at 626-27. *See also McDonald*, 561 U.S. at 786 ("repeat[ing] those assurances" made in *Heller*); *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2162 ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations.") (citing *Heller*, 554 U.S. at 636).

In short, § 922(a)(3) does not impermissibly burden an individual's Second Amendment "right to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2126. Accordingly, the facial challenge to that statute will be rejected.

C.      <u>As-Applied Challenge to § 922(a)(3)</u>

Finally, defendant contends that § 922(a)(3) is unconstitutional as applied to him. The Supreme Court has made clear, however, that the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. 570, 625. It does not protect the right to keep and bear arms for "unlawful" or "unjustifiable" purposes. *Id.* at 608, 612, 627. When § 922(a)(3) was enacted, the Senate Report stated that the interstate traffic of firearms through non-resident sources and mail-order common carriers "is a

means which affords circumvention and contravention of State and local laws governing the acquisition of [firearms]." S. Rep. No. 90-1097, at 49 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2166. Specifically, it noted that "[a]s an example of this, the Massachusetts authorities have testified that 87 percent of 4,506 crime guns misused in that State were purchased outside of Massachusetts in neighboring States." *Id.*

Here, the indictment alleges that defendant engaged in the unlawful trafficking of firearms from Alabama into Massachusetts as part of a criminal conspiracy and for unlawful purposes. Some of those firearms have been recovered in the possession of convicted felons and are therefore likely to be used for criminal purposes. (*See* Docket. No. 56 at 2-3, n.3). In fact, one of the firearms trafficked by defendant was involved in a shooting only three days after it was purchased in Alabama, and the same day that defendant brought it into Massachusetts. (*See* Docket No. 56 at 2).

Under the circumstances, § 922(a)(3) is not unconstitutional as applied to defendant, and the indictment will not be dismissed on that basis.

### IV.  Conclusion

For the foregoing reasons, the motion of defendant Kobe Smith to dismiss the indictment is DENIED.

**So Ordered.**

Dated:  January 29, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court